IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN WILLIAMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:17-cv-408-GMB |
| | ) | |
| NICHOLAS HICKOX and ROW EQUIPMENT, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs John Williams, Terri Smith, and M.H. filed this suit against Defendants Nicholas Hickox and Row Equipment, Inc. ("Row"), asserting claims of negligence; wantonness; negligent/wanton hiring, training, supervising, and retention; negligent/wanton entrustment; and negligent/wanton maintenance, operation, service and/or repair. Doc. 14. Pursuant to 28 U.S.C. § 636(c), the parties consented to have a magistrate judge conduct the proceedings in this case. Docs. 25 & 26. Pending before the court are Defendants' Motion for Partial Summary Judgment (Doc. 35) and Plaintiffs' Motions to Strike Defendants' Motion for Partial Summary Judgment on the Wantonness Claims or to Consider Plaintiffs' Supplemental Evidence/Arguments. Doc. 47. After consideration of the parties' submissions, the applicable law, and the record as a whole, the court concludes that the Motion for Partial Summary Judgment is due to be GRANTED in part and DENIED in part, that the Motion to Strike is due to be DENIED, and that the Motion to Consider New Evidence is due to be GRANTED.

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The purpose of summary judgement is to separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the nonmovant must "go beyond the pleadings" and submit

admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## III. FACTUAL BACKGROUND

Resolving all factual inferences in favor of Plaintiffs, the nonmovants, the facts are as follows.

On February 28, 2017 around 5:30 a.m., Plaintiff John Williams was driving to work in Dothan, Alabama in his four-door Toyota Corolla sedan. Docs. 41-3 at 14 & 35-6.

Family members Terri Smith and M.H. were riding in the car along with Williams. Doc. 41-3 at 14. The weather was clear and the road was dry. Doc. 35-4. Williams was driving about 65 miles per hour. Doc. 41-3 at 18.

Earlier that morning around 2:00 a.m., commercial vehicle driver Hickox departed from Mississippi bound for Patterson, Georgia. Doc. 41-2 at 12–13. Driving a tractor-trailer rig consisting of a tractor and an empty lowboy trailer, Hickox eventually pulled behind Williams' Corolla. Doc. 35-5. Hickox's employer, Row, owned both the tractor and the trailer. Doc. 35-4 at 3. Hickox accelerated to within ten feet of the Corolla before swinging out into the left lane in order to pass Williams. Doc. 41-3 at 18. Hickox then activated his right turn signal as he moved back into the right lane. Doc. 41-2 at 14. As he did so, he struck the Corolla with his tractor (Doc. 41-2 at 14), forcing the Corolla onto the shoulder of the road. Doc. 41-3 at 18. Williams attempted to regain the highway, but was prevented from doing so when Hickox's trailer struck his car—the second impact between Hickox's tractor-trailer and Williams' Corolla. Doc. 41-3 at 18.

Hickox did not stop after the collision, so Williams maneuvered back onto the road and followed Hickox for about a mile and a half before Hickox finally pulled over. Doc. 41-3 at 19. Hickox admitted to Williams that he knew that he struck his vehicle, but said that he could not stop because he needed to use the restroom. Doc. 41-3 at 19.

Row had hired Hickox in 2017. Docs. 41-1 at 20 & 35-8. At the time he was hired, he had a valid Commercial Driver's License ("CDL"). Doc. 41-2 at 7. Though Hickox had not accumulated any driving violation points on his record at the time of the accident, he once had been charged with Driving Under the Influence ("DUI"), had received two tickets for traffic violations, and had been involved in one accident. Doc. 41-2. A few months

after the collision with Williams, on July 16, 2017, Hickox was charged with a second DUI and a related speeding ticket. Doc. 41-2 at 7.

Following the collision, Row completed an internal accident investigation report. Doc. 47-1. One question in the report asked, "What corrective actions can be taken to prevent recurrence?" In response, Hickox's supervisor indicated that Hickox "will ensure he makes necessary stops instead of trying to get to a specific stop and make sure he gets enough rest regardless if his body naturally wakes him." Doc. 47-1 at 3. Another question asked, "What corrective actions have been taken to prevent recurrence?" Here, the report reveals that Hickox was reprimanded for not using extreme caution and for not getting enough rest. Doc. 47-1 at 3.

## IV. DISCUSSION

Before the court can evaluate the merits of the pending Motion for Partial Summary Judgment, the court addresses Plaintiffs' challenge to the argument and evidence offered in support of the summary judgment motion.

### A. Plaintiffs' Motions

Plaintiffs move to strike the partial summary judgment motion as to their claims of wantonness. Alternatively, Plaintiffs request that the court consider new evidence on the issue of wantonness.

#### *1. Motion to Strike*

Plaintiffs request that the court impose sanctions on Defendants for the attempted spoliation of Row's accident investigation report and for the actual spoliation of Hickox's driver logs. Doc. 47 at 8. Plaintiffs argue that the appropriate sanction is either to strike the motion for summary judgment as to the wantonness claims or to allow the jury to draw

an adverse inference of wantonness from Defendants' spoliation. Doc. 47 at 10. Spoliation is "the intentional destruction, mutilation, alteration, or concealment of evidence." *Morrison v. Veale*, 2017 WL 372980, at *2 (M.D. Ala. Jan. 25, 2017) (internal citation and quotation omitted). "In a case of classic spoliation, the offending party purposefully and wrongfully destroyed evidence he knew was supportive of the interest of his opponent." *Story v. RAJ Properties, Inc.*, 909 So. 2d 797, 804 (Ala. 2005).

Although federal law governs the imposition of spoliation sanctions, federal courts may look to state law for guidance. *See Ray v. Ford Motor Co.*, 792 F. Supp. 2d 1274, 1279 (M.D. Ala. 2011). The Alabama Supreme Court analyzes five factors when considering a request for spoliation sanctions, *see id.*, but, of course, the court first determines whether spoliation actually has occurred. *Veale*, 2017 WL 372980, at *5. If there has been spoliation, the court must then find that the spoliator acted in bad faith before imposing sanctions. *Id.* Whether to impose sanctions is a matter left to the discretion of the district court, *see Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006), but the burden of proof falls on the party seeking the sanction. *Veale*, 2017 WL 372980, at *5.

Plaintiffs have not met this burden of proof. As to Hickox's log book, Plaintiffs have not shown that spoliation occurred. Although Plaintiffs promptly asked Defendants to preserve the log, and Defendants have not been able to produce the log in discovery, Plaintiffs have not developed any evidence that Defendants acted in bad faith or intentionally destroyed it. On this showing, sanctions are not warranted.

Plaintiffs also have not carried their burden of proof as to the accident investigation report, which now has been produced in discovery—albeit out of time and with little

explanation for its earlier omission. At a fundamental level spoliation requires the destruction of evidence, not a delay in its production. At any rate, even if the delay in production could be considered "attempted spoliation," as Plaintiffs argue, the most appropriate sanction on the present showing would be to allow Plaintiffs to supplement their summary judgment response with the information contained in the report, which they have done. The court will consider the investigation report and Plaintiffs' supplemental argument in resolving the partial motion for summary judgment. The Motion to Strike (Doc. 47), however, is due to be denied.

***2. Motion to Consider New Evidence***

Plaintiffs request that this court consider the newly disclosed accident investigation report. Defendants do not object to this request, nor do any appropriate grounds for objection appear in the record before the court. Plaintiffs' Motion to Consider New Evidence (Doc. 47) is due to be granted.

**B. Defendants' Motion for Partial Summary Judgment**

Plaintiffs allege that Hickox is liable for his own negligence and wantonness, that Row is vicariously liable for Hickox's negligence and wantonness, and that Row is directly liable for its own negligent supervision and entrustment. Doc. 41 at 19. Because Hickox's and Row's purported negligence and wantonness are questions of substantive law, the court will apply Alabama law to determine whether Defendants are entitled to summary judgment. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (recognizing that "federal courts are to apply state substantive law and federal procedural law").

***1. Wantonness Claims***

Defendants contend that they are entitled to summary judgment on Plaintiffs'

wantonness claims because Hickox did not act with a conscious disregard for the rights and safety of others. Doc. 35 at 8. In response, Plaintiffs argue that a reasonable jury could return a verdict for wantonness based primarily on the evidence that Hickox (1) drove without getting enough rest (Doc. 47 at 2), (2) did not look in his mirrors before changing lanes (Doc. 41 at 4), and (3) attempted to leave the scene of the collision without stopping. Doc. 41-3 at 19. "To hold a defendant liable for wanton conduct in Alabama, a plaintiff must establish a high degree of culpability." *Craft v. Triumph Logistics, Inc.*, 107 F. Supp. 3d 1218, 1220 (M.D. Ala. 2015). Alabama defines wantonness as conduct that is carried on with a reckless or conscious disregard of the rights or safety of others. *Askew v. R & L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1302 (M.D. Ala. 2009); Ala. Code § 6-11-20(b)(3). "[W]antonness requires conduct undertaken with knowledge of the existing conditions and with consciousness that injury will likely result." *Griffin v. Modular Transp. Co.*, 2014 WL 896627, at *2 (N.D. Ala. March 6, 2014) (citing *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007)). "While negligent conduct is characterized by inattention, thoughtlessness, or heedlessness, and a lack of due care, wantonness is characterized by a conscious act." *Id.* (internal quotations and citations omitted). "Determining defendants' knowledge and consciousness does not require direct proof and may rest on reasonable inferences drawn from the circumstances." *Griffin*, 2014 WL 896627, at *2 (citing *Klaber v. Elliott*, 533 So. 2d 576, 579 (Ala. 1998)).

Here, the most significant factor weighing against summary judgment is the evidence that Hickox may have been drowsy at the time of the accident. Under Alabama law, it may be wanton misconduct if, after experiencing drowsiness and fatigue, a driver continues to drive and then falls asleep. *Lankford v. Mong*, 214 So. 2d 301, 302 (Ala. 1968).

This type of wanton conduct is marked by "diminished alertness, where a driver is alleged to have had a consciousness or awareness of sleepiness, tiredness, and fatigue but continued to drive with reckless indifference to the consequences." *Welch v. Time Well Spent Express LLC*, 2016 WL 5462716, at *4 (N.D. Ala. Sept. 29, 2016) (citing *Tew v. Jones*, 417 So. 2d 146 (Ala. 1982)). "Thus, the requisite knowledge for the imposition of liability in such cases is a realization of the premonitory symptoms of sleep." *Id.* (internal quotation and citation omitted). That realization need not be shown by direct proof, but "may be made to appear, like any other fact, by showing circumstances from which the fact or actual knowledge is a legitimate inference." *Tew*, 417 So. 2d at 147.

However, a truck-driver's work schedule or the amount of sleep he had the night before an accident is not in and of itself indicative of drowsiness. *See Tew*, 417 So. 2d at 147. Instead, there must be sufficient evidence to support a reasonable inference that the driver continued to drive in reckless disregard of the premonitory symptoms of sleep. *Glass v. Clark*, 100 So. 3d 1074, 1083 (Ala. Civ. App. 2012). As an example, in *Gunnells v. Dethrage*, 366 So. 2d 1104, 1106 (Ala. 1979), where the jury found the driver to be wanton during a late-night trip, the driver testified that he "might have had a little bit of drowsiness." The driver also told emergency personnel that he had dozed off two or three times before the accident. *Id.*

Similarly, in *Costrides v. Miller*, 374 So. 2d 1335, 1339 (Ala. 1979), the Alabama Supreme Court found that there was sufficient circumstantial evidence for the plaintiff's wantonness claim to be decided by a jury. In *Costrides*, the defendant driver slept for seven and a half hours during the night before the accident. *Id.* In the three preceding days, he slept for only five hours each night. *Id.* On the night of the accident, he remarked to one

of his passengers that he was tired, and that passenger volunteered to drive. *Id.* The driver took the passenger up on the offer temporarily, but later turned down a different passenger's offer to drive. *Id.* The court determined that this evidence was sufficient to present the question of wantonness to the jury. *Id.*

Likewise, in *Stanford v. McDaniel*, 2008 WL 11422598, at *5 (N.D. Ala. Jan. 22, 2008), the district court held that the plaintiff presented substantial evidence from which a jury could infer wantonness. In *Stanford*, the defendant employees worked for a moving company. *Id.* at *1. On the morning of the accident, they drove to Springfield, Missouri, and spent seven to nine hours loading a family's possessions down three or four flights of stairs and onto the moving truck. *Id.* at *2. They left Springfield between 9:00 p.m. and 11:00 p.m. to drive to Birmingham, Alabama, and the accident occurred around 6:30 a.m. *Id.* at *5. Both employees denied any memory of the accident, and claimed the other was driving at the time. *Id.*

Here, there is sufficient evidence for a jury to infer that Hickox consciously disregarded the premonitory symptoms of sleep. In his deposition, Hickox estimated that he departed around 2:00 a.m. or 2:30 a.m. on the day of the accident. Doc. 41-2 at 13. He testified that he typically slept six to seven hours per night. Doc. 41-2 at 13. The accident occurred early in the morning, around 5:30 a.m. Doc. 41-2 at 13. In addition, after the close of discovery Defendants disclosed Row's accident investigation report, which included a recommendation that Hickox should make sure to get sufficient rest before driving, implying that Row's own investigation found that Hickox was fatigued at the time of the collision. On this record, Plaintiffs have presented sufficient evidence for a reasonable jury to find that Hickox wantonly disregarded his fatigue. Moreover, a

reasonable jury could conclude that Hickox's decisions to change lanes without first looking in his mirror and to flee the scene despite knowing he had collided with Plaintiffs' vehicle underscore the recklessness of his conduct. Summary judgment is due to be denied as to the wantonness claims.

***2. Negligent/Wanton Hiring, Training, Supervision, Retention, and Entrustment Claims***

To succeed on the hiring, training, supervision, and retention claims, Plaintiffs must show that (1) Hickox was incompetent, (2) that Row knew about the incompetence or would have learned about the incompetence had it exercised due and proper diligence, and (3) proximate causation. *See Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001); *Johnson v. Brunswick Riverview Club, Inc.*, 39 So. 3d 132, 140 (Ala. 2009). Similarly, the entrustment claims require proof of (1) an entrustment (2) to an incompetent person, (3) with knowledge that the person is incompetent, (4) proximate causation, and (5) damages. *See Halford v. Alamo-Rent-A-Car*, 921 So. 2d 409, 412 (Ala. 2005); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1288 (N.D. Ala. 2013); *Hester v. Brown*, 512 F. Supp. 2d 1228, 1238 (M.D. Ala. 2007). Hickox's incompetence is thus a prerequisite for both sets of claims, but Plaintiffs have not produced sufficient evidence of his incompetence.

"Incompetence is defined as the state or fact of being unable or unqualified to do something." *Craft*, 107 F. Supp. 3d at 1224 (citing *Halford*, 921 So. 2d at 1100). In the context of motor vehicle collisions, "[e]vidence of incompetence must bear on the ability to properly drive a vehicle." *Trinidad v. Moore*, 2016 WL 4267951, at *2 (M.D. Ala. Aug. 11, 2016). The plaintiff must show that the driver to whom the defendant entrusted the

vehicle was unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics, including general incompetence or habitual negligence. *See id.* (internal citation and quotation omitted).

Alabama law does not, however, demand perfection from commercial drivers. "The law requires that a driver have had a demonstrated ability to properly drive a vehicle; it does not require that he have a record completely free of mistake." *Askew v. R & L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009). For example, the individual defendant in *Askew* had been a professional tractor-trailer driver for more than nine years. *Id.* at 1303. Several years prior to working for the defendant employer, the employee had worked as a driver for another company. *Id.* In those nine years, he was issued two moving violations and was involved in four minor accidents, but he held a valid CDL. *Id.* The court decided that the "blemishes on an otherwise clean professional driving record do not amount, under the law, to incompetence." *Id.* Consequently, the court granted summary judgment to the defendants because the plaintiff could not establish incompetence. *Id.*

Similarly, in *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 52 (Ala. 1995), the defendant driver was charged with a DUI ten years before the subject accident. *Id.* at 51. In exchange for attending an alcohol education class, he was given probation or a deferred adjudication. *Id.* In the five years preceding the accident, he received two speeding tickets. *Id.* The driver had never been involved in a car accident. *Id.* The Alabama Supreme Court held that the plaintiff did not present enough evidence to create a question of material fact as to the driver's competence and affirmed summary judgment on the plaintiff's negligent entrustment claim. *Id.* at 52.

As another example, in *Craft*, 107 F. Supp. 3d at 1225, the court found a driver not

to be legally incompetent despite several traffic violations and a previous collision. The driver in *Craft* had a speeding ticket, a tag violation, a seatbelt violation, and a failure-to-stop citation. *Id.* at 1224. The driver also received an overweight ticket while driving his commercial vehicle. *Id.* Years before, he had been involved in a car accident. *Id.* However, he had a valid CDL and had worked for several years as commercial truck driver. *Id.* The court found that the diverse circumstances of the various traffic violations undercut a finding of habitual negligence amounting to incompetence. *Id.* at 1225.

Here, Hickox obtained his CDL in 2010 and it was valid at the time of the accident. Doc. 35-8 at 4. When he was hired by Row, he had no accumulated points for driving violations. Doc. 35-4. His previous employer informed Row that Hickox was an excellent employee with a safe driving history. Doc. 35-8 at 14. However, back in 2001, Hickox had received a DUI charge while driving his personal pickup truck. Doc. 41-2 at 7. He attended a DUI class as a result. Doc. 41-2 at 7. Hickox also was involved in a head-on collision in 2007 while driving an all-terrain vehicle. Doc. 41-2 at 9. In 2015, he received a citation for failing to obey a traffic control device in Florida. Doc. 41-2 at 8. Hickox received a speeding ticket in 2016 while driving an 18-wheeler log truck. Doc. 41-2 at 8. Thus, before the collision here, Hickox had accumulated one DUI and two traffic violations, and had been involved in one accident during his entire driving career—both personal and professional.[1]

[1] A few months after the subject collision, on July 16, 2017, Hickox was charged with a second DUI and a speeding ticket. Doc. 41-2 at 7. Plaintiffs argue that Hickox's post-collision driving infractions prove that Row was negligent or wanton in entrusting the tractor-trailer to Hickox on February 28, 2017. *See* Doc. 41 at 22. However, the three cases they offer for this proposition do not support it. The first, *Redmond v. Self*, 90 So. 2d 238, 242 (Ala. 1956), did not relate to post-collision conduct. In the second, *Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985), the trial court had excluded a letter reflecting that the driver, Sandra New, failed a written driving examination three times prior to the relevant collision and once afterwards. On

While Hickox did not have a perfect driving record, the blemishes on his record do not amount to general incompetence or habitual negligence under Alabama law. Like the driver in *Pryor*, Hickox's DUI occurred more than a decade before he struck Plaintiffs' vehicle. And though Hickox has three violations and one accident on his record, like the driver in *Craft*, the diverse circumstances of these violations cut against a finding of incompetence. Furthermore, like the competent driver in *Askew*, whose nine-year record of commercial driving included two moving violations and four minor accidents, Hickox had been driving professionally for almost seven years with few moving violations. Under Alabama law, Plaintiffs have not presented sufficient evidence to create a dispute of fact as to whether Hickox was legally incompetent to operate a vehicle safely. Accordingly, summary judgment is appropriate on both Plaintiffs' negligent/wanton entrustment claim and their negligent/wanton hiring, training, supervision, and retention claim.

***3. Negligent/Wanton Maintenance, Operation, Service and/or Repair Claims***

Plaintiffs do not oppose summary judgment as to the maintenance, operation, service, or repair claims (Doc 41 at 2), but the mere fact that a motion for summary judgment is unopposed does not relieve the court of its obligation to consider the merits of the motion. *U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*,

---

appeal the plaintiff argued "that the evidence that Sandra had failed her driver's test three times and had no license at the time of the accident was probative of her incompetency and therefore should have been admitted," but he did not claim that the trial court improperly excluded the post-collision failed test. *Id.* As a result, the Alabama Supreme Court held only that the "evidence of Sandra's lack of a driver's license and three-time failure of her driver's license test prior to the accident, although not conclusive, was probative of her possible inexperience and lack of skill, and, therefore, should have been admitted." *Id.* Finally, in the third, *Big 3 Motors v. Hawie*, 895 So. 2d 349, 351 (Ala. Civ. App. 2004), the Court of Civil Appeals did not consider the evidence of the driver's incompetence on appeal because the "sole argument regarding the sufficiency of the evidence as to negligent entrustment [was] that no evidence was presented indicating that any officer or agent of the company entrusted the company vehicle to [the driver] on March 7, 2000, or that any officer or agent of the company knew that [he] was driving the vehicle that day."

363 F.3d 1099, 1101 (11th Cir. 2004). The district court need not conduct a *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials and must review all of the evidentiary materials submitted in support of the motion for summary judgment. *Id.* at 1101–02. Accordingly, the court will review the evidentiary materials presented by Defendants in accordance with Rule 56 of the Federal Rules of Civil Procedure.

Under Rule 56, the party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movants meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.

In the instant case, Defendants have met this burden. They have articulated several bases for summary judgment as to Plaintiffs' claims, supporting the motion with the Alabama Uniform Traffic Crash Report (Doc. 35-4), photos from the accident scene (Doc. 35-5), photos of both vehicles (Doc. 35-6), and deposition testimony. Docs. 35-7 & 35-9.

Once the moving party has met its burden, Rule 56(e) of the Federal Rules of Civil Procedure "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the adverse party does not so respond, summary judgment, if appropriate, shall

be entered against the adverse party. Fed. R. Civ. Pro. 56(e).

By failing to respond to the motion for summary judgment as to the maintenance, operation, service, or repair claim, Plaintiffs have failed to meet their burden under Rule 56. Further, the court has reviewed the evidentiary materials submitted by Defendants and finds no question of fact as to any material issue raised by Defendants as a ground for summary judgment. Accordingly, summary judgment is appropriate as to these claims.

**V. CONCLUSION**

For the foregoing reasons, it is ORDERED that:

1. Plaintiffs' Motion to Strike (Doc. 47) is DENIED;

2. Plaintiffs' Motion to Consider New Evidence (Doc. 47) is GRANTED;

3. Defendants' Motion for Partial Summary Judgment (Doc. 35) is DENIED as to Plaintiffs' wantonness claims; and

4. Defendants' Motion for Partial Summary Judgment (Doc. 35) is GRANTED as to all other claims.

DONE this 31st day of May, 2019.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE